Fremont Brewing Co. v. Schulz.

---

FREMONT BREWING COMPANY V. WILLIAM SCHULZ.

FILED NOVEMBER 2, 1904.   No. 13,631.

1. **Negligence: INSTRUCTIONS.** Issues as to the existence of negligence and contributory negligence are for the jury to determine when the evidence is conflicting, and where different minds might reasonably draw different inferences as to these matters from the facts established. It is only where the evidence is insufficient

to support a verdict that the court is justified in instructing as a matter of law that negligence did not exist.

2. ———: ———. Under the facts set forth in the opinion, *Held*, That the trial court rightfully submitted the question of negligence to the jury, and, further, that there was sufficient evidence to support the verdict.

ERROR to the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed*.

*Courtright & Sidner*, for plaintiff in error.

*F. W. Button*, contra.

LETTON, C.

The plaintiff in error, the Fremont Brewing Company, is the owner of a brewery at Fremont, Nebraska, and was operating the same during the year 1903. On July 16, 1903, William Schulz was employed by the brewing company in its grain house. It appears that a grain scoop therein was operated by steam power in such a manner that it worked by means of a friction wheel situated in the room below where Schulz was working, which friction wheel was brought into gear by means of a lever, a rope fastened to one end of the lever passing horizontally through a pulley, and thence perpendicularly up through a hole in the floor to the place where Schulz was stationed. Schulz's duty was, when the word was given by his fellow laborer, to pull upon said rope sufficiently to bring the friction wheel into gear, and hold it in that position until a windlass in the room below, which it operated, wound up a rope which passed up through another hole in the floor, thence to a pulley near the ceiling of the room where Schulz was working, and from thence over pulleys in the grain room to the scoop. The manner of operation was that, when it was desired to use the scoop, one man took hold of the same and gave the word to Schulz, who then pulled upon the rope which placed the friction wheel in gear and set the windlass in motion. He then held it tight,

so as to keep the wheels in gear while the winding of the rope pulled the scoop. It appears that the opening in the floor through which the large rope came which operated the scoop was about 4 inches wide and 38 inches long, with a guard about 4 inches high placed around it, the object of the guard being, as the plaintiff in error claims, merely to prevent grain from falling through the hole, while the defendant in error asserts that its purpose was to prevent the slack of the large rope from falling over onto the floor and forming a loop thereon. At the time the accident happened Schulz testifies that he had worked in the operation of this machine at intervals during the 3 weeks prior to the time of the injury, the total time of his operation of the same being about 5 or 6 hours altogether. That he was not instructed about how to operate the machine; that when the man who was operating the scoop would call to him to go ahead, he would pull up the gear rope; that he had to use all his strength in holding it until the man shouted "stop," when he released it. That on the day of the accident when he pulled upon the rope, after the command had been given by the man at the scoop, he noticed that the gear rope did not want to come; that he then put all his weight on it, and that finally it came suddenly; that he stumbled forward toward the slot in the floor that the large rope came through; he next noticed that his foot was in the slot, with the big rope which operated the scoop around his ankle; that when he let go of the gear rope the machine did not stop as it should have done, but kept going; that his foot was drawn into the slot; that it broke the guard board and broke his leg. He further testifies that the gear rope in the room below, which passed from the lever which operated the friction wheel through the pulley and thence passed up through the floor, had been broken, and that it had been repaired by using two small ropes which passed through the pulley instead of the large rope. The negligence charged is that the company failed to warn him of the dangers of the employment, failed properly to guard the opening in the

NEBRASKA REPORTS.		[Vol. 72

floor so as to prevent the large rope from forming a loop, and that it had negligently failed to keep in proper repair the rope and pulley beneath the floor, by which the friction lever was operated. The theory of the defendant in error being that one of the defective small ropes in the lower room caught at the side of the pulley when Schulz first pulled; that it suddenly slipped and gave way when he pulled harder, causing him to fall, and that afterwards when he released the rope on falling it again caught, which prevented the lever from acting, and kept the machine at work, thus pulling on the gear rope, drawing his foot into the hole and breaking his leg; that if proper precaution had been taken, either to guard the hole in the floor or to maintain the rope and pulley in the lower room in proper condition, the accident would not have happened. The sole ground of error alleged is that the evidence does not support the verdict, and that the jury should have been instructed to find for the plaintiff in error.

There is a conflict in the evidence with regard to the condition of the rope and pulley which operated the lever at the time of the accident. The testimony on the one hand being that 2 quarter-inch ropes had been used in the place of one half-inch rope; that there was a space of about five-eighths of an inch between the edge of the pulley and the wooden block supporting it, so that the small rope could catch thereon; and that the block sustaining the pulley introduced in evidence by the brewing company had been changed, and was not the same block that was in use at that time. On the other hand, the testimony is that but one rope was used with the pulley, instead of 2 small ones, and that the block and pulley introduced in evidence were the same as were in use at the time of the accident. The uncontradicted testimony shows that machines of this character have largely gone out of use, being replaced by automatic machines; and that, when they were in common use, guard rails of from 18 inches to 2 feet in height were usually placed around the slot or opening in the floor through which the rope works. The

plaintiff in error asserts that the rope could not have gotten around the plaintiff's ankle unless he had placed it there himself, while the theory of the defendant in error is that, when his fellow laborer inserted the scoop in the grain, a slack was caused in the rope, which ran back over the pulleys and formed a loop upon the floor. That, when he stumbled by reason of the rope below suddenly being released, his foot was caught in the loop and thereby drawn into the slot. There is no evidence that a loop was there except the inference which may be drawn from the fact that Schulz's foot was caught and pulled into the slot, though the testimony shows that when the scoop is inserted in the grain it may cause 18 inches to 3 feet of slack in the rope. It seems clear, however, that, if a guard of 18 inches to 2 feet had been placed around the hole in the floor, the accident in all probability would not have happened.

The issues as to the existence of negligence and contributory negligence are for the jury to determine when the evidence is conflicting, and where different minds might reasonably draw different inferences as to these matters from the facts established. It is only where the evidence is insufficient to support a verdict that the court is justified in instructing as a matter of law that negligence did not exist. Under the testimony which tended to prove the substitution of 2 quarter-inch ropes for a half-inch rope in the working of the lever, and which tended to show that the pulley was so loose that a distance of five-eighths of an inch existed at the side of it, in which a small rope might catch, then, the probability of the rope becoming caught and failing to stop the machine might have been foreseen, and the plaintiff in error would be guilty of negligence in allowing this condition to exist; and if the usual practice in the construction of machinery of this nature was to place a guard 18 inches to 2 feet high around the slot where the rope operated, so that a slack of 18 inches to 3 feet could not form a loop upon the floor, then, ordinary care on the part of the plaintiff in

error would have required the construction of such guard, and failure to furnish such guard would be negligence. The testimony offered by the defendant in error upon these points required the submission of the issue as to whether negligence existed or not to the jury, and it would have been erroneous for the court to determine the question as a matter of law. For these reasons, the judgment of the district court should be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.